**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ELIJAH ZAMORANO, | § | |
| *Plaintiff* | § | |
| | § | SA-20-CV-00151-XR |
| v. | § | |
| | § | |
| ZYNA LLC, NAZ LOGISTICS LLC, | § | |
| MOHAMED ALMAJIDI, JOHN | § | |
| NORTON HAYES JR., DECEASED; | § | |
| AHMED MOUSA, J.W. LOGISTICS | § | |
| OPERATIONS, LLC, | § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered Defendant J.W. Logistics Operations, LLC's Motion to Dismiss (ECF No. 4), Plaintiff Elijah Zamorano's Response (ECF No. 5), and Defendant's Reply (ECF No. 6). After careful consideration, the Court will **GRANT** the motion.

**BACKGROUND**

This case arises out of a motor vehicle collision that occurred in San Antonio, Texas on November 28, 2018. Defendant John Norton Hayes, Jr. ("Hayes") was operating a commercial vehicle, crashed into another vehicle driven by non-party Nicholas Sanchez, exited his commercial vehicle, and fled the scene. Pl.'s First Am. Pet. ¶ 13, ECF No. 1 at 16–25 (hereinafter, "Pl.'s Compl."). As a result of the crash, both Hayes' commercial vehicle and Sanchez's vehicle were disabled in the roadway. *Id.* Plaintiff Elijah Zamorano ("Plaintiff") was lawfully operating his motor vehicle and crashed into one or both of the disabled vehicles. *Id.* ¶ 14. After the impact, Plaintiff's vehicle was struck from behind by yet another vehicle operated by another non-party. *Id.* As a result of the collision, Plaintiff sustained severe and permanent bodily injuries. *Id.* ¶ 15.

Defendant Hayes received a citation for failing to stop and render aid. *Id.* ¶ 14. Plaintiff alleges that the injuries he sustained "were proximately and directly caused by the negligent

1

conduct" of Hayes.  *Id.* ¶ 16.  As to the rest of the Defendants, Plaintiff does not clearly allege their role in the collision or their relationship to each other.  He alleges that Defendant Ahmed Almajidi ("Almajidi") is the owner of the commercial vehicle Hayes was driving, and that Almajidi is the owner of Defendants Zyna LLC ("Zyna") and NAZ Logistics LLC ("NAZ").  *Id.* ¶ 21.  Plaintiff also claims, in one instance, that Hayes was employed by Almajidi, Zyna, and/or NAZ; but, in another instance, he claims that Hayes was "operating the commercial vehicle while in the course and scope of employment with and/or with the consent and permission of" some or all of the other five Defendants: Almajidi, Zyna, NAZ, Ahmed Mousa ("Mousa"), and, as relevant to the present motion, J.W. Logistics Operations, LLC ("JWLO").  *Compare id.* ¶ 12 *with* ¶ 19.

Plaintiff filed his Original Petition on February 7, 2019 in the 285th Judicial District Court of Bexar County, Texas.  ECF No. 2 at 65.  In that Petition, Plaintiff named only Hayes, Almajidi, Zyna, and NAZ as Defendants.  *Id.*  After conducting some discovery, "one of the Defendants identified [JWLO] as a potential liable party to the matter," so Plaintiff filed his First Amended Petition on January 10, 2020, naming Mousa and JWLO as additional Defendants.  Pl.'s Resp. to Def.'s Mot. to Dismiss ¶¶ 1–3, ECF No. 5 (hereinafter, "Pl.'s Resp.").  Plaintiff brings numerous claims sounding in negligence against the Defendants.  As to JWLO, Plaintiff brings claims under several negligence theories: *respondeat superior*; negligent hiring, entrustment, training and supervision, retention, and failing to ensure driver qualifications; and gross negligence.  Pl.'s Compl. ¶¶ 19–20, 22–24.  On February 7, 2020, JWLO removed the case to this Court on the basis of federal question jurisdiction.[1]  Def.'s Notice of Removal ¶¶ 5–21, ECF No. 1.  JWLO now

---

[1] Federal question jurisdiction under 28 U.S.C. § 1331 exists in cases of "complete preemption," where a "federal statute completely preempts the state-law cause of action," because such "a claim which comes within the scope of that action, even if pleaded in terms of state law, is in reality based on federal law."  *See Gillum v. High Standard, LLC*, No. SA-19-CV-1378-XR, 2020 WL 444371, at *2 (W.D. Tex. Jan. 27, 2020) (discussing federal jurisdiction and holding a broker-defendant properly removed a state law cause of action that was completely preempted by the FAAAA).

moves to dismiss all claims against it pursuant to Rule 12(b)(6), arguing Plaintiff's claims are completely preempted by federal law.  Def.'s Mot. to Dismiss, ECF No. 4 (hereinafter, "Def.'s Mot.").

## DISCUSSION

### I.      Legal Standards

#### a.   Rule 12(b)(6)

A party may move for dismissal of a claim where the plaintiff fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint…must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

#### b.   Preemption Provisions of Section 14501

JWLO's removal and its present motion are premised on preemption provisions found in 49 U.S.C. § 14501.  Def.'s Mot. 1.  Specifically, Section 14501(c)(1) provides that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier…or any motor private carrier, broker, or freight

forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Section 14501(b)(1) provides that no state may "enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501(b)(1).

These preemption provisions, originally enacted by the Federal Aviation Administration Authorization Act ("FAAAA")[2] in 1994 and amended by the Interstate Commerce Commission Termination Act ("ICCTA")[3] in 1995, were part and parcel of Congress' determination to deregulate the trucking industry. *See Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008) (discussing history of trucking deregulation).[4] FAAAA's preemption provisions were intended to "pre-empt state trucking regulation" and "to avoid…a State's substitution of its own governmental commands for 'competitive market forces' in determining…the services that motor carriers will provide." *Id.* at 368, 372. ICCTA extended preemption beyond motor carriers to freight forwarders and brokers.[5]

These preemption provisions (collectively referred to herein as "FAAAA preemption")[6] are interpreted broadly: preemption "may occur even if a state law's effect on rates, routes, or

---

[2] Federal Aviation Administration Authorization Act of 1994, Pub. L. 103-305, 108 Stat. 1605–06 (1994). As originally enacted, the preemption provision at Section 14501(c)(1) applied only to motor carriers. Subsequent amendment added broker and freight forwarder to the language of the section.

[3] Interstate Commerce Commission Termination Act of 1995, Pub. L. 104-88, 109 Stat. 899 (1995).

[4] The "long history behind the termination of the Interstate Commerce Commission" and "the substantial economic deregulation of the surface transportation industry" is also discussed in the Committee Report on the ICCTA. *See supra* n. 3.

[5] *See supra* n. 3 (describing the ICCTA as "another important step in a 15-year effort to deregulation [sic] the motor carrier industry.")

[6] Although Section 14501(c)(1) was enacted as part of the FAAAA and Section 14501(b)(1) as part of the ICCTA, the parties often refer to the provisions collectively as contained in the FAAAA. The courts often interpret these provisions together, and "[j]ust as courts interpreting the FAAAA use ADA caselaw, so too do courts interpreting § 14501(b)(1) use previous cases considering § 14501(c)(1)." *Gillum*, at *7 n.3 (citing *Dnow, L.P. v. Paladin Freight Solutions, Inc.*, No. 17-CV-3369, 2019 WL 398235 (S.D. Tex. Jan. 12, 2018)). Unless explicitly noted, for the sake of consistency the Court will refer to "FAAAA preemption" as encompassing both Sections 14501(c)(1) and 14501(b)(1)'s preemption provisions.

services 'is only indirect'" and it does "occur[]at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption related objectives." *Rowe*, 552 U.S. at 370–71 (citing *Morales v. Trans World Airlines*, Inc., 504 U.S. 374, 384–90 (1992)).   Thus, courts have held many claims against brokers preempted by the provisions of Section 14501.   *See, e.g.*, *Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc.*, 888 F. Supp. 2d 197, 208 (D.N.H. 2012) (granting judgment as a matter of law to broker on four non-contractual claims that were expressly preempted by 49 U.S.C. § 14501(c)(1)); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638, 643 (N.D. Tex. 2010) (dismissing all non-contractual claims against broker, including negligence, as preempted); *Huntington Operating Corp. v. Sybonney Exp., Inc.*, No. CIV.A. H-08-781, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2010) (same).

When it comes to whether these preemption provisions apply to personal injury claims sounding in state-law negligence—the types of claims at issue in this case—"[f]ederal district courts are sharply divided."   *Gillum*, 2020 WL 444371, at *3 (discussing split among district courts).   Although there is no binding authority on this issue, this Court recently held that personal injury negligence claims against a freight broker which "directly implicate[] how" that broker "performs its central function of hiring motor carriers" are preempted by FAAAA.   *Id.* at *5.

## II.   Analysis

JWLO argues that FAAAA "expressly preempts Plaintiff's state-law negligence claims against a licensed freight broker such as JWLO."   Def.'s Mot. 1.   According to JWLO, the facts in this case are nearly identical to those presented to this Court in *Gillum*, because:

> Plaintiff's allegations in this case relate to brokerage services.   Plaintiff alleges Defendant JWLO—a freight broker—was negligent in its vetting of freight carrier NAZ Logistics, LLC (who, in turn, was negligent in vetting the driver involved in the accident).   In essence, Plaintiff claims that Defendant JWLO was negligent in arranging for the transportation of property between motor carriers.

*Id.* at 7.  Thus, "Plaintiff seeks to enforce a duty of care related to how JWLO arranged for the transportation of property by the defendant motor carriers, which are the very 'services' JWLO provides as a federally-licensed freight broker."  *Id.* at 9.  JWLO argues that, as in *Gillum*, "[t]hese allegations 'go to the core of what it means to be a careful broker,'" and the Court should follow its analysis in *Gillum* to find Plaintiff's claims are "squarely preempted."  *Id.* at 7 (citing *Gillum*, 2020 WL 444371, at *8); *id.* at 10.

In response, Plaintiff asks that the Court (1) find his claims are not preempted and remand this case to state court, (2) treat JWLO's motion to dismiss as a motion for summary judgment and grant Plaintiff adequate time to conduct discovery, or (3) grant Plaintiff leave to amend his complaint to address "any issues raised in [JWLO's] Motion to Dismiss subject to a Motion to Remand."  Pl.'s Resp. 9–10.

a.  <u>Are Plaintiff's claims preempted?</u>

Plaintiff claims that his "valid causes of action of negligence and gross negligence" against JWLO "are not preempted by the FAAAA or any other federal statute, which Plaintiff can demonstrate with proper time to take discovery."  Pl.'s Resp. 1.  Plaintiff argues "a determination of a broker's liability is not determined by whether they are a licensed broker, but rather based on fact-specific inquiry into the broker's relationship with the shipper."  *Id.* at 6.  On this basis, Plaintiff asks for the opportunity to conduct discovery about "the true nature of [JWLO's] relationship with the other Defendants in this case."  *Id.*  Essentially, Plaintiff argues that whether JWLO is a broker protected by FAAAA's preemption provisions is a fact question that cannot be resolved on the present motion to dismiss.  The Court disagrees.

Plaintiff confuses the issue by citing to inapposite authority for the proposition that "[t]he difference between a carrier and a broker is often blurry."  *Id.* at 6 (citing *Nebraska Turkey*

*Growers Co-op Ass'n v. ATS Logistics Servs., Inc.*, No. 4:05CV3060, 2005 WL 3118008, at *5

(D. Neb. Nov. 22, 2005)).  Plaintiff block-quotes a case from a Texas court of appeals, relying on

that authority to support his proposition that "a broker's liability is not determined by whether they

are a licensed broker, but rather based on fact-specific inquiry into the broker's relationship with

the shipper."  *Id.* (citing *CEVA Logistics U.S., Inc. v. Acme Truck Line, Inc.*, No. 01-16-00482-

CV, 2018 WL 6694606, at *5 (Tex.App.—Houston [1st Dist.] Dec. 20, 2018)).  However, those

cases deal with a broker's liability for lost or damaged shipments arising under the Carmack

Amendment, 49 U.S.C. § 14706.  In those instances, because "only 'carriers' are liable for lost or

damaged shipments under the Carmack Amendment," a court will look to whether a purported

"broker" "qualifies as a carrier" by virtue of "accept[ing] responsibility for ensuring delivery of

the goods, regardless of who actually transported them."  *CEVA Logistics*, 2018 WL 6694606, at

*5 (internal citations omitted).

That issue is entirely separate from the one presented in this case, which is whether JWLO

is a broker under the preemption provisions of 49 U.S.C. § 14501.  Under FAAAA, a "broker" is

"a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal

or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or

otherwise as selling, providing, or arranging for, transportation by motor carrier for

compensation."  49 U.S.C. § 13102.  In other words, a broker "arranges for the transportation of

property by a motor carrier for compensation.  A broker does not transport the property and does

not assume responsibility for the property."[7]

---

[7] *What are the definitions of motor carrier, broker and freight forwarder authorities?*, FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION (Dec. 5, 2014), https://ask.fmcsa.dot.gov/app/answers/detail/a_id/248/~/what-are-the-definitions-of-motor-carrier%2C-broker-and-freight-forwarder.

Even accepting the well-pleaded facts in Plaintiff's complaint as true, it is clear that JWLO's only role in the collision that injured Plaintiff was as a broker.  Plaintiff admits as much.  *See* Pl.'s Resp. 9 ("The Defendant broker in *Gillum* was not a <u>known licensed freight broker like [JWLO]</u>… In contrast, <u>Defendant [JWLO] is a licensed broker</u> that provides a variety of different services.") (emphasis added).[8]  The entire basis of Plaintiff's claims against JWLO—that JWLO "had a duty to ensure the companies it retained, referred or provided the work used due care to hire competent and safe drivers to perform the services offered," *id.* at 8—"go to the core of what it means to be a careful broker."  *Gillum*, 2020 WL 444371, at *4; *see also supra* n. 7 (defining a broker's duties as "arrang[ing] for the transportation of property by a motor carrier.").  The Court also takes judicial notice of JWLO's broker authority issued by the Federal Motor Carrier Safety Administration.  Def.'s Mot., Ex. B.[9]  Because the record is clear that JWLO's only role in the collision was as a broker, Plaintiff cannot plausibly allege a cause of action against JWLO that is not preempted by 49 U.S.C. § 14501.

Alternatively, Plaintiff argues that his claims against JWLO are not preempted because his "causes of action of negligence and gross negligence have nothing to do with the 'rates, routes or services' of [JWLO] as defined by the FAAAA."  Pl.'s Resp. 7.  This is contrary to the Court's holding in *Gillum*: that negligence claims against a broker arising out of personal injury sustained by a motor carrier the broker hired "are indeed 'related to' the services that a broker is anticipated or contracted to provide."  *Gillum*, 2020 WL 444371, at *5.

---

[8] In the Fifth Circuit, "factual assertions in pleadings…are considered to be judicial admissions conclusively binding on the party who made them."  *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

[9] On a motion to dismiss, it is proper for a district court to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).  This includes matters of public record, such as JWLO's broker authority issued by the FMCSA.

Plaintiff's own briefing betrays how his claims are significantly related to JWLO's services as a broker.  Plaintiff argues in his briefing that JWLO "had a duty to ensure that the companies it retained, referred or provided the work used due care to hire competent and safe drivers to perform the services offered, had proper training, supervision and safety programs and properly maintained the vehicle driven to complete the job obtained by [JWLO]."  Pl.'s Resp. 8–9.  Plaintiff is describing JWLO's services as a broker—one who "arranges for the transportation of property by a motor carrier for compensation."  *See supra* n. 7.  Plaintiff also claims in his briefing that preemption of claims such as his "would empower every truck broker to recklessly and freely hire incompetent motor carriers riddled with incompetent driver's and safety violations, without investigating whether the motor carriers complied with safety laws or whether the commercial vehicle drivers were fit and competent to drive."  Pl.'s Resp. 7.

In other words, Plaintiff seeks to hold JWLO to a standard of care that would require more than federal law does—to require a freight broker to investigate its motor carriers and drivers before hiring them to arrange for transportation.  This is exactly the "patchwork of state and local regulations and standards" that Congress sought to avoid by deregulating the surface transportation industry and enacting the FAAAA's preemption provisions.[10]  *Gillum*, 2020 WL 444371, at *5.  Claims such as Plaintiff's, which seek "to enforce a duty of care related to how [the broker] arranged for a motor carrier to transport the shipment" and arise out of "a broker hiring a motor carrier (and any related investigations of that motor carrier)" are indeed claims "relating to…services of any…broker" and are thus preempted.  *Id.* at *5; 49 U.S.C. § 14501(b)(1).

---

[10] Contrary to Plaintiff's claims, FAAAA preemption does not "empower" brokers to act recklessly.  Rather, pursuant to Congress' preemptive intent, the FAAAA allows brokers to lawfully operate under one federal scheme of regulation rather than being subject to inconsistent duties arising out of varying states' laws.

b.  <u>Should Plaintiff be granted additional discovery?</u>

Next, Plaintiff asks the Court to treat JWLO's motion to dismiss as a motion for summary judgment and to grant Plaintiff adequate time to conduct discovery.  Pl.'s Resp. 2, 9–10.  Plaintiff's argument for treating JWLO's motion as one for summary judgment is not entirely clear, but seems to be premised on JWLO's attachment of its FMCSA broker authority to its motion to dismiss.  *See id.* at 3 (discussing treatment of motions to dismiss as motions for summary judgment where "matters outside of the pleadings" are presented to the court).  As noted above, it is proper for a court reviewing a Rule 12(b)(6) motion to dismiss to take judicial notice of matters of public record.  *See supra* n. 9.  The Court's consideration of JWLO's broker authority, which is a matter of public record, does not convert JWLO's motion to dismiss under Rule 12(b)(6) into one for summary judgment under Rule 56.  Plaintiff's request for additional discovery under Rule 56(d) is thus unavailing.

c.  <u>Should Plaintiff be granted leave to amend?</u>

Finally, Plaintiff asks for leave of the Court to amend his complaint "to address any issues raised in [JWLO's] Motion to Dismiss."  Pl.'s Resp. 10.  JWLO argues that any amendment of Plaintiff's complaint would be futile.  Def.'s Reply 6, ECF No. 6.  The Court agrees.

Although leave to amend pleadings "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend is not automatic.  *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991).  The decision to grant or deny a motion to amend is within the sound discretion of the Court.  *Id.*  In exercising its discretion, the Court will consider "the futility of amendment," among other factors.  *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Here, as discussed above, it is undisputed that JWLO's only role in the collision underlying this suit was as a broker.  The Court

has already concluded that Plaintiff's claims against JWLO as a broker, sounding in negligence, are completely preempted by 49 U.S.C. § 14501.  As such, the Court finds that any amendment would be futile.

## CONCLUSION

Because Plaintiff's claims against JWLO are completely preempted, Plaintiff's complaint fails to state a claim upon which relief may be granted.  Defendant JWLO's Motion to Dismiss (ECF No. 4) is **GRANTED**, and Plaintiff's claims against JWLO are therefore **DISMISSED** with prejudice pursuant to Rule 12(b)(6).  Having resolved the issue of federal preemption of the claims against JWLO, the only claims against remaining Defendants involve purely state law issues.  Therefore, Plaintiff's claims against remaining Defendants are **REMANDED** to state court.  The Clerk is **DIRECTED** to mail a certified copy of this Order to the clerk of the 285th Judicial District of Bexar County, Texas.

It is so **ORDERED**.

**SIGNED** this 11th day of May, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE